# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| TRUE THE VOTE, INC., *et al.* | § | |
| Defendants, | § | |
| | § | |
| And HARRY HAURY and CAIN | § | Misc. Case No. 4:23-mc-00286 |
| & ASSOCIATES, | § | |
| Petitioners, | § | |
| | § | |
| | § | Underlying Litigation: |
| v. | § | |
| | § | KONNECH, INC. v. |
| KONNECH, INC. | § | TRUE THE VOTE, INC., *et al.* |
| | § | |
| Plaintiff. | § | Civil Action No. |
| | § | 4:22-cv-03096 |

## DEFENDANTS' and PETITIONERS' JOINT OPPOSED MOTION TO QUASH OR MODIFY PLAINTIFF KONNECH's THIRD PARTY SUBPOENA ISSUED TO HARRY HAURY and FOR PROTECTIVE ORDER

True the Vote, Inc., Catherine Engelbrecht, and Gregg Phillips, Defendants in the Underlying Litigation directly implicated by the subpoena that Plaintiff Konnech, Inc. served on Harry Haury ("Haury"), along with Petitioner Haury, a third party to the Underlying Litigation (also, the "Lawsuit") pending in U.S. District Court for the Southern District of Texas, Houston Division, and his employer, Petitioner Cain & Associates ("Cain", together, "Petitioners"), file this Joint Opposed Motion to Quash or Modify Plaintiff Konnech's Third Party Subpoena Issued to Harry Haury and for Protective Order, and show the Court as follows:

### CONFERENCE INCONCLUSIVE

Petitioners' counsel has been out of the country since about March 3, 2023. Defendants' counsel has limited authorization to act on behalf of Petitioners, but because Defendants' counsel still has insufficient knowledge regarding what information responsive to the subpoenas Cain may possess, the conference that took place on March 16, 2023 with Plaintiff's counsel was not able to

reach conclusions on numerous issues and Defendants' counsel is unable to commit Petitioners to a particular resolution of them.

## JURISDICTION AND VENUE

Petitioner Haury resides in Chesterville, Missouri. Plaintiff's subpoena demands that Petitioner produce documents at AAA Process Service located in Pevely, Missouri. (*See* Exhibit A). FRCP 45(3)(A) requires a motion to quash to be filed where compliance is required.

## INTRODUCTION

On September 12, 2022, Plaintiff filed a complaint in the Southern District of Texas, Houston Division, against Defendants, for defamation arising out of an alleged violation of the Computer Fraud and Abuse Act (CFAA). Plaintiff also filed an *ex parte* TRO and, later, a preliminary injunction, that, among other things, compelled Defendants to disclose discovery information prior to discovery. The TRO and preliminary injunction were granted. The court that initially presided over the matter granted Defendants' motion for its recusal.

The subpoena, served on Haury on February 28, 2023, commands him to produce documents in his and his employer's custody by March 20, 2023. Fed. R. Civ. P. 45(d)(3)(A) provides the Court "must quash" a subpoena, if that subpoena:

(i)   fails to allow a reasonable time to comply;

(ii)  requires disclosure of privileged or other protected matter;

(iii) subjects a person to undue burden.

*See Enviropak Corp. v. Zenfinity Capital, LLC*, 2014 WL 4715384 at *3 (E.D. Missouri); *CSS, Inc. v. Herrington*, 354 F.Supp.3d 702, 705-706 (N.D.Tex. 2017).

Konnech's subpoena fails on all counts. Konnech served Haury's subpoena on February 28, demanding, of a non-party, with no stake in the litigation, at least 53 and arguably well over

200 burdensome, duplicative, overbroad, and irrelevant categories of documents, many of which explicitly demanded confidential information from a law enforcement client of Petitioner's employer, Cain. Konnech demanded the production of the documents by March 20, 2023, which would allow Haury, an individual, only 20 days to comply. Only later, on March 8, did Konnech serve Defendants with the Haury subpoena (though the date on the cover letter was February 28), giving Defendants even less time to protect their own interests.[1]

Federal Rule of Civil Procedure (FRCP) 45(d)(1) states, "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." But Konnech made no effort to confer with Petitioner first. Nor did Konnech confer with Defendants.

Instead, Konnech treated Mr. Haury like an actively engaged party to a litigation who is subject to unduly burdensome discovery demands, not just because Plaintiff's demands purport to require costly production by a nonparty, or are in many cases irrelevant, but because they are—even more wastefully—duplicative of demands Plaintiff has already made on actual parties to the Lawsuit, the Defendants. "Where, as here, discovery is sought from a non-party, courts have wide latitude in deciding motions regarding non-party subpoenas, and courts are directed to give special consideration in assessing whether the subpoena subjects a non-party to annoyance or an undue burden or expense." *Gregg v. B&G Transportations, LLC*, 2021 WL 1598969, at *2 (E.D. Mo. Apr. 23, 2021) (citation omitted).

---

[1] Fed. R. Civ. P. 45(a)(4) requires that a notice of the subpoena be served on each party to the Lawsuit before the subpoena is served on a Petitioner.

**ARGUMENT**

**I.    The Subpoena's Dozens of Requests for Production are Unduly Burdensome and Costly**

Konnech's Requests for Production on Haury numbered 1, 2, 3, 7, 8, 9, and 10-20 each constitute 1 request, for a total of 17 (though RFP 9 is unlimited in scope). But **RFP 4** constitutes **at least 7 requests**, and **as many as 21** (requesting documents between Petitioner and any of *3* Defendants concerning *7* separate subjects: "[1] The Pit, [2] Konnech, [3] Eugene Yu, [4] Konnech Computer, [5] Konnech Data, [6] Poll Worker Data and/or [7] this Lawsuit").

**RFP 5** constitutes **at least 7 requests**, and **as many as 21.** It requests agreements between Petitioner and at least 3 entities ("[1] Los Angeles County, [2] Los Angeles District Attorney's Office, [3] or any other government entity" on 7 different subjects ("[1] The Pit, [2] Konnech, [3] Eugene Yu, [4] Konnech Computer, [5] Konnech Data, [6] Poll Worker Data and/or [7] this Lawsuit"). **RFP 6** seeks "communications" on *seven* (7) subjects between Haury and at least 24 different parties from whom Konnech would naturally like information in its Lawsuit, though subparts a, h, o, u, and v constitute even more requests, regarding an *unlimited* number of entities. The inappropriate burdensomeness and overbreadth of RFP 6 are best viewed in full:

<u>**REQUEST FOR PRODUCTION 6:**</u>

All communications between You and the following, concerning or relating to [Defendants' event] The Pit, Konnech, Eugene Yu, Konnech Computer, Konnech Data, Poll Worker Data and/or this Lawsuit:

(a) Any of the [3] Defendants;
(b) Los Angeles County
(c) Los Angeles District Attorney's Office;
(d) Andrew Stevens;
(e) Marc Beaart;
(f)  Eric Neff;
(g) Grant Bradley
(h) Any current or former Konnech employee;
(i)  Mike Hasson;

(j)  OPSEC Group, LLC;
(k) Allegheny County;
(l)  Fairfax County;
(m)Dekalb County;
(n) Johnson County;
(o) The FBI, or *any other government agency*, or any agent working for the FBI, or any other government agency;
(p) Cain & Associates, LLC;
(q) Nate Cain
(r)  One America News Network;
(s)  RSBN;
(t)  Steve Bannon;
(u) *Any other government entity*; and
(v) *Any other person*.
(Emphases added).

Thus, Konnech is actually making, depending on one's count, over 220[2] categories of document requests, many of them duplicative of demands already made on Defendants, and seeking confidential information belonging to Haury's employer, but Konnech is making them on a non-party with no financial or other interest in the lawsuit, whose attorney is unavailable, with ostensibly merely 20 days for Haury to respond, and 12 days for Defendants—both of which provide significantly less time than the 30 days actual parties get to respond to discovery. That's unduly burdensome and fails to provide reasonable time to respond.

## II.  The Subpoena Improperly Demands of a Non-party Many Documents Konnech Has Already Demanded of Defendants

Konnech had already served Defendants with 95 requests for production, in February, 2023, before demanding of non-party Haury much of the same information. Parties, especially plaintiffs who create their own lawsuits, must exhaust reasonable alternatives *before* unduly

---

[2] RFPs 1, 2, 3, 7, 8, 9 and 10-20 = 17 categories of documents or requests, with RFP 9 being at least 1 very burdensome request.
  RFP 4 amounts to 21 categories.
  RFP 5 amounts to 21 categories.
  RFP 6 amounts to at least 24 categories of documents, on 7 subjects, for 168.

Thus, Plaintiff has made at least 53 requests and arguably (17+21+21+168) or 227 requests. The unknown number of persons implicated in RFP 9 and RFP 6 subparts a, h, o, u, and v increase the number further.

burdening non-parties, including by seeking documents first from other parties. *See Langford v. Alegent Health*, 2010 WL 2732876 (D. Neb. 2010) (quashing subpoena as unduly burdensome when opposing party was in possession of sought documents and plaintiff could not show it had exhausted its production efforts); *Xcaliber Int'l Ltd., LLC. v. Ieyoub*, 2006 WL 3412265 (D.C.La. 2006) (request directed to the nonparty was unduly burdensome where same information was obtainable from a party to the case). On the basis of both FRCP 26(b) and 45(d), courts have found it "practical in certain situations to require the subpoenaing party to make an attempt to obtain information from a party first." *Id.* citing *Ingersoll v. Farmland Foods, Inc.,* 2011 WL 1131129 at *8 (W.D.Mo. March 28, 2011) (citations omitted).

A court "must limit the frequency or extent of discovery otherwise allowed by [the rules] if it determines … the discovery sought is unreasonably cumulative or duplicative." *Enviropak*, 2014 WL 4715384 at *4. In *Progressive Emu, Inc. v. Nutrition and Fitness, Inc*., 785 Fed. Appx.622, 627-28 (11th Cir. 2019) (unpublished), the court found burdensome a demand for "any and all documents" that "refer to, relate to, or evidence" only 10 categories of documents, with one request "having multiple subparts," especially where the moving party had, as Konnech does here, "adequate opportunity to discover the demanded documents through the normal discovery process".

The table below illustrates the overlap in Konnech's fishing expeditions against both Defendants and Petitioner: indeed, it's clear Konnech simply cut-and-paste from the Requests for Production it served on Defendants (*see* Exhibit B) to burden non-party Haury with the same requests for information it seeks from Defendants:

| Konnech's Discovery Demands on *Defendants* | Konnech's Subpoena Demands on Haury |
|---|---|
| 1 All video, audio and/or transcripts, and photographs of The Pit. | 1 All video, audio, and/or transcripts, and photographs of the Pit. |

| | |
|---|---|
| 51 Any and all demonstratives, speeches, presentations, including PowerPoint presentations and outlines of presentations, including drafts of same, concerning The Pit. | 2 Any, and all demonstratives, speeches, presentations, including PowerPoint presentations and outlines of presentations, including drafts of the same, concerning the Pit. |
| 52 Any and all Documents and Communications concerning or relating to The Pit. | 3 Any and all Documents and Communications concerning or relating to the Pit. |
| 34 Any and all Communications between You and any of the following concerning or relating to Konnech, Eugene Yu, Konnech Computer, Konnech Data, Hotel Room Data, and/or this Lawsuit. | 6 All communications between You and the following, concerning or relating to The Pit, Konnech, Eugene Yu, Konnech Computer, Konnech Data, Poll Worker Data and/or this Lawsuit |
| 28 All Documents and Communications reflecting any default and/or backend user name and/or password for accessing any Konnech Computer and/or Konnech Data. | 8 All Documents and Communications reflecting any default and/or backend user name and/or password for accessing any Konnech Computer and/or Konnech data. |
| 29 All Documents and Communications reflecting all users of any Konnech Computer. | 9 All Documents and Communications reflecting all users of any Konnech Computer. |
| 30 All Documents and Communications reflecting any and all Konnech employee or staff credentials used to access any Konnech Computer and/or Konnech Data. | 10 All Documents and Communications reflecting any and all Konnech employee or staff credentials used to access any Konnech Computer and/or Konnech Data. |
| 18 Any and all video and/or pictures of Konnech's offices, Eugene Yu's home, Eugene Yu and any current or former employee of Konnech. | 18 Any and all video, audio, photographs, or other media recorded at Konnech's offices or Eugene Yu's home. |

Moreover, in its discovery requests to Defendants, Konnech has already demanded duplicate information on six of the very same entities.[3] The above subpoena requests—RFPs 1-3, 6, 8-10, and 18—should be quashed, in their entirety, as unnecessarily duplicative.

### III. Plaintiff Must Show the Relevance of RFPs 9, 18, and 19 to a Significant Issue in the Case

"Rule 45(c)(3) requires courts to quash a subpoena that 'subjects a person to undue burden' (45(c)(3)(A)(iv)). This ground encompasses situations where the subpoena seeks information irrelevant to the case." *Cook v. Howard* 484 Fed.Appx. 805, n7 (4th Cir. 2012). Of course, the

---

[3] Andrew Stevens, Marc Beaart, Eric Neff, Grant Bradley, Mike Hasson, and OPSEC Group, LLC

matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence." 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.) (Wright & Miller) (citing Rule 26(b)(1)). The party issuing the subpoena has the burden to show both likely relevance "to a significant issue in the case" and to show that "the materials at issue are not reasonably obtainable from other available sources." *New England Teamsters & Trucking Industries Pension Fund v. New York Times Co*., 2014 WL 1567297 at \*3 (S.D. N.Y. 2014) (*citing Gonzales v. National Broadcasting Co., Inc*., 194 F.3d 29, 36 (2d Cir. 1999)); *see also Jeffcoat Enterp., Inc. v. Charter Comm's, Inc*., 2020 WL 2104732 at \*2 (E.D.Mo. 2020).

What's more, the weaker the relevance, the greater the undue burden on the non-party and the greater the issuing party's burden to fund any costs.[4] Because Plaintiff is asking a non-party to help it prove the case it brought, the Court should apply a higher standard of relevance to compensate the non-party for its burden, cost, and other inconvenience.[5]

Haury's employer, Cain, contracted with the Los Angeles County DA to provide computer forensics following the DA's seizure of Plaintiff's electronic devices, on October 4, 2022, pursuant to a criminal case against Plaintiff's CEO (now dismissed). Plaintiff through its subpoena is attempting to dive into those details, outside the Underlying Litigation, such as the relationships

---

[4] *See In Compaq Computer Corp. v. Packard Bell Electr., Inc*., 163 F.R.D. 329, 335 (D.C.Cal.1995) (holding where documents sought from a nonparty were not relevant, any burden on the nonparty is by definition undue and ordering compensation to nonparty for costs of compliance); *Premium Serv. Corp. v. Sperry & Hutchinson Co*., 511 F.2d 225 (9th Cir. 1975) (weighing relevance of documents against burden and invasion of privacy, especially to non-parties); *O'Boyle v. Sweetapple*, 2016 WL 492655, at \*4 (S.D. Fla. 2016) (production of irrelevant information would result in needless and wasteful expenditures of time and money by parties); *S.E.C. v. Fuhlendorf*, 2010 WL 2159361 (W.D. Wash. 2010) (production of irrelevant documents would impose undue burden on nonparty); *Williams v. Khan*, 2018 WL 2240261 (D. Ariz. 2018) (court quashed subpoena as unduly burdensome because plaintiff could not demonstrate relevance).

[5] *See Gilmore v. Jones*, 339 F.R.D. 111, 119–20 (W.D. Va. 2021) ("because nonparties are strangers to the litigation who have no dog in the fight, the standard of review for a nonparty subpoena is higher than that used to assess discovery requests to litigants") (cleaned up) (citing *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *see also Schaaf v. SmithKline Beecham Corp*., 233 F.R.D. 451, 453 (E.D.N.C. 2005) ("In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance").

among the principals of Cain, an ongoing business concern with unrelated clients. *See* RFP 19 ("Any and all documents demonstrating Your affiliation with Cain & Associates, LLC, including but not limited to, documents reflecting Your position as acting CEO"). The subpoena is thus overly broad in demanding irrelevant details regarding Petitioner's affiliation with his own company, as well as extraneous information on Petitioner's *social media accounts*, and all URLs "associated" with him, *see* RFP 20 ("All Documents and Communications reflecting all Social Media account usernames, including but not limited to burner accounts, URLs, and/or domain names claimed by, owned, and/or controlled by You"), none of which is reasonably related to Konnech's lawsuit against Defendants alleging defamation and violation of the CFAA. In conference, Plaintiff's counsel stated that unknown persons were defaming Plaintiff on social media, and Plaintiff wished to know whom—presumably in order to launch a separate litigation. But to demand that a non-party produce information that might be used against that non-party in a separate case is a quintessential fishing expedition.

Similarly, RFP 9 ("All Documents and Communications reflecting all users of any Konnech Computer") demands that Haury go to unreasonable lengths to prove Plaintiff's own case. Although only *Defendants'* use of Plaintiff's computers is relevant to the Underlying Litigation's CFAA claim, Plaintiff's subpoena fishes for evidence of use by *all* users in the rest of the world. It's clearly overbroad and unduly burdensome. Moreover, because the evidence of computer use that Plaintiff seeks could only come directly from *Plaintiff's* own devices, it's all the more unreasonable to demand that Petitioner produce it.

**IV. Plaintiff Should Advance the Expected Costs and Pay Any Significant Costs That Arise Unexpectedly**

Aside from modifying a subpoena like Plaintiff's, the only plausible alternative to quashing it is to make Plaintiff bear the burden of prosecuting its own case, particularly as against a non-party with relatively limited resources. *See* Rule 45(d)(1)(D); *The Hunte Corp. v. Martinelli*, 2010 WL 4813849 (W.D. Mo. 2010) (rather than quashing subpoena of nonparty, district court shifted expenses to plaintiff). The expense borne by the nonparty normally should not be significant, but here, Plaintiff is asking Petitioners to engage in both uncompensated production of documents, which Haury has estimated will cost $57,360 not including fees of legal counsel, and to turn over work product valued at around $230,000. *See* Haury Affidavit ¶¶4-5 (Exhibit C). Moreover, the Court should (1) allow Petitioner time to estimate the costs of assisting Plaintiff in its Lawsuit against entities other than Petitioner, and (2) require Plaintiff to advance that amount to Petitioner, as well as (3) order Plaintiff to pay Petitioner for unexpected but significant costs that may arise. *See Rhea v. Apache Corp.*, 833 Fed. Appx. 186, 191 (10th Cir. 2020) (holding district courts should evaluate whether the expenses incurred will be significant, ideally by fixing costs in advance of production, or when that is not feasible by directing the subpoenaing party to reimburse for any significant expenses). Accordingly, this Court should deny production of documents if Plaintiff fails to demonstrate how it will compensate petitioner or otherwise protect him from undue expense.[6]

---

[6] *See ATLC, Limited v. Eastman Kodak Co.*, 2006 WL 3422413 (D.C.Fla.2006) (holding same); *Guy Chem. Co. v. Romaco AG*, 243 F.R.D. 310 (D.C.Ind.2007) (conditioning grant of motion to compel upon payment of costs by moving party); *Garner Const., Inc. v. Intern. Union of Operating Engineers*, 2007 WL 4287292 (W.D. Wash. 2007) (nonparty protected against significant expense). Even where a plaintiff has "meager financial resources," splitting the costs is nonetheless appropriate, because it keeps nonparties from being forced to subsidize an unreasonable share of costs of litigation, and cost shifting promotes the most efficient use of resources in the discovery process. *See Linder v. Calero- Portocarrero*, 31 F.Supp.2d 134 (D.C.D.C.1998); *Compaq Computer Corp. v. Packard Bell Electron., Inc*., 163 F.R.D. 329 (D.C.Cal.1995); *Wright v. Jeep Corp*., 547 F.Supp. 871 (D.C.Mich.1982) (awarding "reasonable fee" to non-party, including a professional fee and cost of supplying documents and remuneration for inconvenience).

The quite significant costs of responding to Konnech's subpoena must also be shifted to Konnech because: (1) the scope of the requests is overly broad; (2) the requests are highly invasive; (3) Petitioner will incur costs separating privileged and confidential material; (4) Petitioner has no financial interest in the Lawsuit; and (5) the relative resources of Petitioner, an individual, and Konnech, an international corporation prosecuting the Underlying Litigation, militate toward Konnech assuming the reasonable costs of its own Lawsuit. *See Tessera, Inc. v. Micron Tech., Inc.*, No. C06-80024MISC-JW(PVT), 2006 WL 733498 at *10 (N.D. Cal. Mar. 22, 2006); *In re Application of the Law Firms of McCourts & McGrigor Donald*, No. M. 19-96, 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001); The Sedona Conference Commentary on Rule 45 Subpoenas to Non-Parties, Second Edition, 22 SEDONA CONF.J.1 (2021).

## V. Many of Konnech's Requests Seek Confidential Information Belonging to a Client of Haury's Employer, Cain & Associates

"Rule 45(c)(3)(B) protects subpoenaed parties from unnecessary expense in responding to a subpoena, and also from 'unnecessary or unduly harmful disclosures of confidential information.'" *Klay v. All Defendants*, 425 F.3d 977 (11th Cir. 2005) (quoting FED. R. CIV. P. 45 Advisory Committee Notes (1991 amendments)). For example, if a subpoena seeks information from a business about its customers, it may implicate the business's interest in protecting competitively sensitive information, as well as the customers' interest in protecting their privacy." *Virginia Dep't of Corr. v. Jordan,* 921 F.3d 180, 190 (4th Cir. 2019) (citing *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251-52 (6th Cir. 2018)).

Konnech's **Requests for Production 5, 6(b-f), 7-15, and 17-18** all seek confidential client information relating to Petitioner's work for a client, the LA County DA. (RFP 18's request for "media recorded" by the LA DA at Eugene Yu's home is also of unclear relevance). Yet Konnech has taken no action on the Protective Order that Defendants provided a month ago.

In addition, Mr. Haury is not the appropriate entity of whom to demand documents that belong either to his employer, Cain & Associates, or that employer's client, LA County. Such documents are not within Mr. Haury's possession, custody, or control. For example, in *Schaaf*, the court quashed the subpoena of an employee on grounds the proper subject of the subpoena seeking the employer's documents was the employer. "By definition, the documents that plaintiff seeks via third-party subpoena to [employee] Cutler are [employer] GSK documents, even if located in Cutler's GSK office or her home." 233 F.R.D. at 455 (citing *In re Grand Jury Subpoenas Duces Tecum*, 1983, 722 F.2d 981, 984 (2d Cir.1983) ("[A corporation's] records . . . may not be treated as the private confidential papers of any one officer or employee. … The records, moreover, do not belong to him but to the organization").

In addition, many of Konnech's RFPs seek confidential information about law enforcement investigations by LA County and the identity and work of confidential informants, that Konnech would not otherwise be allowed to obtain through any other channels, such as in the now-abated criminal action against Konnech's CEO, Eugene Yu, or through a FOIA request. *See Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007); *Adionser v. Dep't of Just.*, 811 F. Supp. 2d 284, 300 (D.D.C. 2011), *aff'd in part sub nom. Adionser v. U.S. Dep't of Just.,* No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012) (noting FOIA "Exemption 7(E) protects from disclosure law enforcement records to the extent that their production 'would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure would reasonably be expected to risk circumvention of the law", and citing 5 U.S.C. § 552(b)(7)(E) and *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or

nullify their effectiveness.")).

Konnech seeks information clearly subject to confidentiality, such as agreements between Petitioner and the Los Angeles District Attorney's Office, or any other government entity (RFP 5) and all documents and communications relating to the LA County DA's investigation (RFPs 7-12). Konnech also seeks information that would identify or lead to the identity of confidential government informants, which information it would not otherwise be allowed to obtain. (RFP 10, 13-15). The informant's privilege allows the government to withhold the identity of individuals who provide the Government with information of violations of law. *See Roviaro v. United States*, 353 U.S. 53, 59 (1957). The purpose of the informant's privilege is the furtherance and protection of the public interest in law enforcement. *Id.* The privilege is applicable in civil as well as criminal cases. *Dole v. Local 1942, International Brotherhood of Electric Workers, AFL–CIO*, 870 F.2d 368, 372 (7th Cir.1989). Accordingly, Petitioner is concerned about RFPs that seek the identity of the confidential informant, s*ee* RFPs 10, 13-15, which may be relevant to other cases Konnech is litigating, such as a former employee's whistleblower suit pending against Konnech in Michigan, but which here is manifestly an attempt to exploit a non-party for a fishing expedition.

## CONCLUSION

In conclusion, in addition to demanding that an individual with no stake in this litigation produce over 200 categories of documents within 20 days, with late notice to Defendants, Plaintiff makes many unreasonable demands within the document requests themselves:

| RFP | Duplicative of Discovery Demands on Defendants | Irrelevant and thus Doubly Burdensome | Seeks Confidential Client Information | Unduly Burdensome Pure Fishing Expedition |
|---|---|---|---|---|
| 1 | X – but Haury has few documents and will provide | | | |

| | | | | |
|---|---|---|---|---|
| | them | | | |
| 2 | X - same | | | |
| 3 | X - same | | | |
| 4 - Haury has few documents and will provide them | | | | |
| 5 | | | X | |
| 6 | X | | 6(bf) | X (53-213 requests) |
| 7 | | | X | |
| 8 | X | | X | |
| 9 | X | X | X | X (all users) |
| 10 | X | | X | X |
| 11 | | | X | |
| 12 | | | X | |
| 13 | | | X | X |
| 14 | | | X | X |
| 15 | | | X | X |
| 16 - RESOLVED | | | | |
| 17 | | | X | |
| 18 | X | X | X | |
| 19 | | X – No responsive documents | | X |
| 20 | | X | | X |
| | | | These demands also seek information only in the reasonable possession, custody, or control of Petitioner's *employer*. | |

**PRAYER**

Defendants pray the Court to sustain their objections contained herein, and to quash the subpoenas.

Respectfully Submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ *Sasha Riedisser*
RICHARD E. FINNERAN, #60768MO
SASHA RIEDISSER, #71141MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
richard.finneran@bryancave.com
sasha.riedisser@bclplaw.com

GREGOR | WYNNE | ARNEY, PLLC[7]

By: /s/ *Michael J. Wynne*
Michael J. Wynne

Texas State Bar No. 0078529
SDTX No. 0018569
Cameron Powell
DC Bar No. 459020
909 Fannin Street, Suite 3800
Houston, Texas 77010
Telephone: (281) 450-7403
mwynne@gwafirm.com
cpowell@gwafirm.com

**ATTORNEYS FOR DEFENDANTS TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, AND GREGG PHILLIPS**

/s/ Christopher A. Byrne
Christopher A. Byrne, Esq.
Washington D.C. Bar No. 928424
DC Bar No. 459020
1050 – 30th St. NW
Washington, D.C. 20007
Telephone: (202)487-6800
cabesq@protonmail.com

**ATTORNEY FOR HARRY HAURY AND CAIN & ASSOCIATES, INC.**

---

[7] Per Local Rule 12.01(A) for the Eastern District of Missouri, "Admission to the bar of this Court is not required to appear in a miscellaneous case."

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I have communicated with lead counsel for Plaintiff and that as of this filing, we have not yet resolved the matters herein. We have reason to expect that Plaintiff is opposed to most or all the resulting instant motion and will amend this certificate immediately if that turns out not to be the case.

By: */s/ Sasha Riedisser*
Sasha Riedisser


## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on counsel for Plaintiff and all counsel of record in accordance with the FEDERAL CIVIL RULES OF PROCEDURE this March 17, 2023.

By: */s/ Sasha Riedisser*
Sasha Riedisser